UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NORTHWEST ADMINISTRATORS, INC.,

    Plaintiff,

v.

NATIONAL EXPRESS TRANSIT SERVICES CORPORATION,

    Defendant.

No. 2:19-cv-00744 WBS AC

FINDINGS AND RECOMMENDATIONS

This matter is before the court on plaintiff's motion to compel compliance by defendant National Express Transit Services Corporation ("National Express") with an audit request for payroll records pursuant to the National Labor Relations Act, 29 U.S.C. § 185, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and certain benefit plan documents. ECF No. 14. This motion was referred to the undersigned pursuant to Local Rule 302(c)(19).[1] The motion came before the undersigned for hearing on August 14, 2019. ECF No. 22. Attorney Christopher Hammer appeared on behalf of plaintiff. Defendant has not responded to the motion or otherwise appeared in this action. For the reasons stated

---

[1] While not styled as such, the undersigned construes plaintiff's motion as a motion for partial default judgment, as discussed below. In addition, the District Judge instructed plaintiff to re-notice the motion before the assigned magistrate judge. ECF No. 13. The undersigned construes that instruction as a direct referral of the matter from the District Judge.

1

below, the undersigned will recommend granting plaintiff's motion.

## I. RELEVANT BACKGROUND

Plaintiff Northwest Administrators, Inc. is the authorized administrative agency and assignee of the Western Conference of Teamsters Pension Trust Fund ("Trust Fund")—a Taft-Hartley employee benefits trust fund providing retirement benefits to eligible participants.[2] ECF No. 1 at 2. On April 30, 2019, plaintiff filed a Complaint to Compel Audit alleging as follows.

Defendant National Express is a Delaware corporation engaged in the public transportation business in Solano County, California. ECF No. 1 at 2. National Express is bound by a collective bargaining agreement with Local 315 of the International Brotherhood of Teamsters. Id. at 3. As part of that collective bargaining agreement, National Express accepted the Trust Fund's Agreement & Declaration of Trust ("Trust Agreement"), which requires National Express (and the other subject employers) to report for and pay monthly contributions to the Trust Fund at specific rates for each hour of compensation paid to its employees who are members of the bargaining unit represented by Local 315. Id. The Trust Agreement requires as follows with respect to employer payroll records:

> Section 1. – Employer Records and Audits:
> Each Employer shall promptly furnish to the Trustees or their authorized representatives on demand any and all records of his past or present Employees concerning the classification of such Employees, their names, Social Security numbers, amount of wages paid and hours worked or paid for, and any other payroll records and information that the Trustees may require in connection with the administration of the Trust Fund, and for no other purpose. . . . The Trustees or their authorized representatives may examine any books and records of each Employer which the Employer is required to furnish to the Trustees on demand whenever such examination is deemed necessary or desirable by the Trustees in the proper administration of the Trust. . . . .

ECF No. 15 at 29 (Plummer Decl., Exhibit B).

At some point, the Trustees of the Trust Fund deemed it necessary and advisable to the proper administration of the Trust that their authorized representatives examine National

---

[2] The Trust Fund operates pursuant to Section 302 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 186(c)(5), and ERISA, 29 U.S.C. §§ 1001 *et seq.*

2

Express's books and records going back to October 1, 2013 to evaluate its reported payments. ECF No. 1 at 3-4. Despite notice to defendant of the Trustees' desire to conduct this audit, and demands made to examine the records, defendant failed to make its records available.[3] Id. at 4. Plaintiff's complaint seeks the production of various documents in connection with the requested audit as well as attorney's fees and costs related to accessing the records. Id. at 5.

On May 10, 2019 plaintiff served the summons and complaint on defendant, via its designated agent for service of process. ECF No. 5. Defendant has failed to file an answer or otherwise respond. On June 11, 2019, the Clerk of Court entered default against defendant. ECF No. 8. On July 12, 2019, plaintiff filed a motion to compel compliance with the audit and noticed the motion for hearing before the District Judge assigned to this case. ECF No. 9. Notice of the motion was served on defendant's designated agent. ECF No. 12. On July 15, 2019, at the direction of the District Judge, plaintiff refiled the motion to be heard before the undersigned. ECF Nos. 13, 14. On July 16, 2019, plaintiff filed an amended notice of hearing, a copy of which was also served on defendant. ECF Nos. 18, 19. Defendant has not responded to the motion.

Before instituting this action, plaintiff sought and obtained in the U.S. District Court for the Western District of Washington an order virtually identical to the one sought here. Northwest Administrators, Inc. v. National Express Transit Servs. Corp., No. 2:18-cv-00880-RSM, ECF No. 11. Although that order was served on defendant at its Chicago, Illinois office, defendant failed to respond. Id., ECF No. 12. At plaintiff's request, that suit was dismissed without prejudice on January 28, 2019. Id., ECF No. 13.

II. MOTION

Through this motion, plaintiff seeks an order compelling defendant to make the following documents available to plaintiff's authorized representatives:

////

---

[3] In April 2019, prior to filing this suit, plaintiff's counsel contacted defense counsel to inquire whether defendant intended to provide the auditors with the documents necessary to complete the audit. ECF No. 15 at 71. On April 3, 2019, defense counsel replied that defendant planned to comply but then ceased all further communication. Id. at 1-2, 71.

3

>    1. All tax documents listed on the contract and confirmation letter
>         a. State Employer Security Reports
>         b. State Industrial Insurance Reports
>         c. Quarterly FICA and Federal Income Tax Reports (941/941A)
>         d. Annual Federal Unemployment Reports (FUTA 940)
>    2. Complete employee roster that includes the route-type for each driver
>    3. Payroll for all employees for 10/01/2013 to 6/30/2019
>    4. Job descriptions for each iteration of the Driver and Mechanic position (Teamsters, ATUs, None's, Trainees and any others that do driving or mechanic work).

ECF Nos. 14 at 7; 23.1 at 3-4. [4]

This court has jurisdiction pursuant to Section 301(a) of the Labor Management Relations Act, 1947, 29 U.S.C. § 185(a), and Section 502(e) of ERISA, 29 U.S.C. § 1132(e).

Plaintiff's motion to compel compliance with the audit request does not fit squarely under any rule of civil procedure. However, at the hearing, counsel agreed with the court that the motion effectively seeks partial default judgment and is properly analyzed under Federal Rule of Civil Procedure 55. The motion seeks the same relief sought in the complaint, itself, except for the attorney's fees and costs.[5]

### III. DISCUSSION

A. <u>Legal Standard</u>

Pursuant to Rule 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application

---

[4] Plaintiff originally also sought to compel the personal appearance of specific representatives of National Express in connection with these documents. ECF Nos. 14 at 7; 16. Following the court's request at the hearing for further briefing on this point, plaintiff filed a supplemental letter and a revised proposed order amending the motion to omit the names of the individual officers. ECF Nos. 23, 23.1.

[5] Counsel advised that, depending on the results of the anticipated audit, the complaint might later be amended to request past-due monies.

4

for default judgment lies within the district court's sound discretion.  <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this determination, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

<u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

  As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages.  <u>TeleVideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing <u>Geddes v. United Fin. Group</u>, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); <u>see also</u> <u>Fair Housing of Marin v. Combs</u>, 285 F.3d 899, 906 (9th Cir. 2002).  Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  <u>Cripps v. Life Ins. Co. of N. Am.</u>, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388 (9th Cir. 1978)); <u>accord</u> <u>DIRECTV, Inc. v. Huynh</u>, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (citation and quotation marks omitted); <u>Abney v. Alameida</u>, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim.").

  The Ninth Circuit has impliedly endorsed the practice of entering partial default judgment. <u>See</u> <u>Dreith v. Nu Image, Inc.</u>, 648 F.3d 779, 781 (9th Cir.2011) ( ". . . the district court entered default judgment against them with respect only to liability, but deferred ruling on damages pending further briefing and evidentiary submissions.").

 B. <u>The Eitel Factors</u>

    *i. Factor One: Possibility of Prejudice to Plaintiff*

  The first <u>Eitel</u> factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a

default judgment. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Here, plaintiff will face prejudice if the court does not enter partial default judgment in this case. Absent entry of a default judgment, plaintiff would be without recourse in light of defendant's failure to respond to prior attempts to compel an audit, including the order from the Western District of Washington. Accordingly, the first Eitel factor favors the entry of default judgment.

*ii. Factors Two and Three: Merits of Claims and Sufficiency of Complaint*

The merits of plaintiff's substantive claim and the sufficiency of the complaint are considered here together because of the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175. Here, the merits of the claim and sufficiency of the complaint favor entry of default judgment.

Plaintiff seeks to enforce its power to audit pursuant to ERISA and the terms of the Trust Agreement. As one court recently summarized:

> ERISA requires a covered employer to "maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employee." 29 U.S.C. § 1059(a)(1). An employee benefit plan has the right to audit those records where such audits are contemplated by the governing plan documents. See Santa Monica Culinary Welfare Fund v. Miramar Hotel Corporation, 920 F.2d 1491, 1495 (9th Cir. 1990) (district court improperly refused to compel audit where random audits were authorized under controlling plan agreements). The Ninth Circuit has emphasized the importance of employers' compliance with these audit obligations. See, e.g., Northern California Retail Clerks Unions and Food Employers Joint Pension Trust Fund v. Jumbo Markets, 906 F.2d 1371, 1373 (9th Cir. 1990) ("[I]n taking on the obligation to report the basis on which contributions will be made to an ERISA fund, the Employer undertakes a fiduciary obligation which must be faithfully and punctiliously observed.").

Constr. Laborers Tr. Funds for S. California Admin. Co. v. Parra, No. CV 18-802-MWF (JPRx), 2018 WL 6039863, at *1 (C.D. Cal. May 9, 2018).

The right of ERISA employee benefit plans to enforce a power to audit pursuant to a trust agreement is well established. Central States Pension Fund v. Central Transport, 472 U.S. 559, 581–82 (1985); see Santa Monica Culinary, 920 F.2d 1491 (holding that a court can compel an audit when the trust agreement terms allow for it); California Drywall/Lathing Indus. Labor-

6

Mgmt. Cooperation, Inc. v. MLR Drywall Servs. Inc., No. C 09-3531 JSW (JL), 2010 WL 519827, at *6 (N.D. Cal. Jan. 19, 2010), as amended (Feb. 4, 2010) ("Where a collective bargaining agreement, as here, gives Trustees of an employee benefit plan the right to audit an employer's books and records, it will be enforced."), report and recommendation adopted, 2010 WL 532560.

Plaintiff's right to compel an audit is also firmly supported by the language of the Trust Agreement requiring National Express to "promptly furnish to the Trustees or their authorized representatives on demand . . . information that the Trustees may require in connection with the administration of the Trust Fund," and permitting the Trustees or their representatives to "examine any books and records of each Employer . . . on demand whenever such examination is deemed necessary or desirable by the Trustees." In Central States, the Supreme Court considered a trust agreement with language nearly identical to the terms of the instant Trust Agreement[6] and found the requested audit to be "well within the authority of the trustees as outlined in the trust documents." 472 U.S. at 566, 581.

Further, it is no impediment to the instant motion that the request for audit was not made as part of an action to collect delinquent contributions from National Express, or that plaintiff has not (yet) alleged that National Express breached its obligations under the Trust Agreement. The Ninth Circuit has held, in accordance with Supreme Court precedent, that an audit may be compelled purely based on the terms of the relevant trust agreement:

---

[6] The trust agreement in Central States provided:

> Production of Records—Each employer shall promptly furnish to the Trustees, upon reasonable demand the names and current addresses of its Employees, their Social Security numbers, the hours worked by each Employee and past industry employment history in its files and such other information as the Trustees may reasonably require in connection with the administration of the Trust. The Trustees may, by their representatives, examine the pertinent records of each Employer at the Employer's place of business whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust.

472 U.S. at 566.

7

> The fact that the Trustees have no existing claim for contribution, nor any information that [the Employer] may not have made the required contributions is not an obstacle to the Trustees' right to audit in this case. In Central States, 472 U.S. at 581, 105 S. Ct. at 2845, the Court held that the trustees had the right to audit, even though the trustees had neither a claim for delinquent contributions, nor did they allege that the employer breached its obligation to contribute.

Santa Monica Culinary, 920 F.2d at 1495.

Accordingly, plaintiff has adequately pleaded its claim to compel National Express to comply with an audit of its payroll books and records.

### iii. Factor Four: Amount at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, the amount at stake is not yet known because plaintiff has been unable to conduct an audit of defendant's payroll. Therefore, partial default judgment should be granted so that such an audit can be completed. Given defendant's failure to cooperate in the judicial process and fulfill its contractual obligations, this Eitel factor weighs in favor of granting plaintiff's motion.

### iv. Factor Five: Possibility of Dispute Concerning Material Facts

Here, there appear to be no material facts in dispute. The court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177. Accordingly, this factor favors entry of default judgment.

### v. Factor Six: Whether Default Was Due to Excusable Neglect

In this case, it is extremely unlikely that defendant's default was the result of excusable

neglect. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Plaintiff served defendant with the summons and complaint. ECF No. 5. Plaintiff also served defendant with notice of the instant motion to compel the audit. ECF Nos. 12, 18, 19. Moreover, defense counsel initially responded to plaintiff's counsel's informal request for compliance with the audit request. ECF No. 15 at 1-2, 71. Thus, the record supports a conclusion that defendant has chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

*vi. Factor Seven: Policy Favoring Decisions on the Merits*

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Accordingly, although the court is cognizant of the policy favoring decisions on the merits, that policy does not, by itself, preclude the entry of default judgment.

*vii. Partial Default Judgment Is Appropriate*

Upon consideration of the Eitel factors, the undersigned concludes that it is appropriate to grant plaintiff's motion to compel compliance with the audit by granting plaintiff partial default judgment on its claims.

IV. CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS THAT:

1. Plaintiff's July 15, 2019 motion to compel compliance with an audit (ECF No. 14), heard in open court on August 14, 2019, and construed as a motion for partial default judgment, be GRANTED;

2. Within 15 days of the date of entry of the District Court's order, defendant National Express Transit Services Corporation, through its officers, agents, employees, and attorneys, be ordered to make available to plaintiff's Trust Fund's authorized representatives the following documents:

9

      a. All tax documents listed on the contract and confirmation letter:

          i. State Employer Security Reports

          ii. State Industrial Insurance Reports

          iii. Quarterly FICA and Federal Income Tax Reports (941/941A)

          iv. Annual Federal Unemployment Reports (FUTA 940);

      b. Complete employee roster that includes the route-type for each driver;

      c. Payroll for all employees for 10/01/2013 to 6/30/2019; and

      d. Job descriptions for each iteration of the Driver and Mechanic position (Teamsters, ATUs, None's, Trainees and any others that do driving or mechanic work).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. <u>Id.</u>; <u>see also</u> Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: August 22, 2019

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE